**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| PATRECE R. EDWARDS-BRADFORD, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | No. 2:25-cv-02454-SHL-cgc |
| WK KELLOGG CO., | ) ) ) | |
| Defendant. | ) | |

**ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Patrece Edwards-Bradford instituted this pro se action against Defendant WK Kellogg Co. on April 25, 2025, alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990 ("ADA").  (ECF No. 2.)  Kellogg filed a Motion for Summary Judgment on April 9, 2026.  (ECF No. 24.)  On July 13, 2026, United States Magistrate Judge Charmiane Claxton entered a Report and Recommendation ("R&R"), recommending that Kellogg's summary judgment motion be granted.  (ECF No. 29.)  The Parties had fourteen days, until July 27, 2026, to file objections to the R&R, and neither did so within that period.  (Id. at PageID 462.)

However, seventeen days after the R&R was filed, Edwards-Bradford filed Specific Objections to the Report and Recommendation, requesting de novo review and lodging eight objections.  (ECF No. 30.)  Because the R&R correctly concludes that Kellogg is entitled to summary judgment, even when reviewed de novo in part, the R&R is **ADOPTED IN FULL** and Kellogg's Motion for Summary Judgment is **GRANTED**.

## I.    <u>BACKGROUND</u>

Because Plaintiff did not comply with Federal Rule 56 or Local Rule 56.1 in responding to Kellogg's Statement of Undisputed Facts, the R&R recommends treating Kellogg's asserted facts as undisputed for the purposes of ruling on the Motion.  As explained below in Part III, the Court agrees and **ADOPTS** the R&R's conclusions of fact.

The R&R finds that Kellogg's Memphis Plant employs about 300 employees who are represented by the Bakery, Confectionary Tobacco Workers and Grain Millers Union, Local 252G, in a Collective Bargaining Agreement ("CBA") with Kellogg.  (ECF No. 29 at PageID 455.)  Pursuant to that CBA, plant employees can "bid" into certain roles based on skills and seniority.  (Id.)  When an employee needs work restrictions, the plant's Environmental, Health & Safety ("EHS") Managers try to find a role for them that accommodates their restrictions.  (Id.) For instance, some employees with restrictions "perform office work, cleaning, or working the 'star wheel.'"[1]  (Id. (citing ECF No. 24-6 at PageID 336).)  However, when no suitable substitute work exists, an employee is placed on leave.  (Id.)

Plaintiff Edwards-Bradford began her employment with Kellogg on September 4, 2001, as a Tank Room Operator.  (ECF No. 29 at PageID 455.)  In 2009, she bid into a role in the Carton & Glue department and worked there for several years.  (Id.)  She first reported medical-related work restrictions in 2019 because of a back injury—as a result, Kellogg accommodated her and assigned her "sedentary work and other tasks."  (Id.)  Plaintiff worked under these restrictions until mid-2020.  (Id.)

---

[1] Kellogg refers to the star wheel as a piece of production equipment, the operation of which is a "primarily sedentary task[]."  (ECF No. 24-6 at PageID 336.)

Then, in July 2022, Plaintiff again reported restrictions.  Under these new restrictions, she

could lift, push, or pull, no more than ten pounds, which the R&R finds was "much less than the

requirements for her job in the Glue & Carton department." (Id. at PageID 456.)  Therefore,

when positions were open, EHS managers assigned Plaintiff to modified Tank Room Operator

work or the star wheel, and if they were not open, managers placed her on leave.  (Id.)  The R&R

finds that, between July 2022 and February 2023, Plaintiff's restrictions varied, including

weight-lifting restrictions (ranging from seven and a half pounds to twenty-five pounds) and

limitations on squatting or standing.  (Id.)

On January 5, 2023, Plaintiff was re-assigned to the Tank Room under lifting restrictions.

(Id.)  Because Plaintiff could only lift items up to a certain weight, Kellogg required Plaintiff's

Tank Room coworkers to lift items for her.  (Id.)  Further, because similar accommodation for

overtime hours was not consistently available in other departments, Plaintiff's overtime hours

were strictly limited to Tank Room work.  (Id.)  For over a month, she worked overtime hours

ranging from six to forty-eight hours per week.  (Id.)

On February 16, 2023, Plaintiff's physician updated her restrictions, stating that she

should "[c]ontinue working as a tank room operator with no repetitive lifting, no lifting greater

than 25lbs until further advised." (Id. (quoting ECF No. 24-6 at PageID 372).)  Kellogg

complied with the doctor's direction.

This arrangement eventually led to dissatisfaction, and, on April 3, 2023, Plaintiff filed a

grievance asserting that Kellogg should allow her to work overtime hours in other departments,

which would violate the push and pull restrictions specified in her doctor's note.  (Id.)  For

support, Plaintiff argued that, previously, her supervisor had assigned her work "that went

against her restrictions." (Id. (citing ECF No. 24-4 at PageID 94).)  Kellogg investigated the

3

grievance and dismissed it.  Afterwards, Plaintiff tried bidding into a "Floors" job, but was denied because of the February 16 work restrictions.  (Id.)

On July 31, 2023, Plaintiff filed a complaint with the Equal Employment Opportunity Commission, alleging disability-based discrimination.  (Id. at PageID 457.)  The EEOC declined to proceed with her claim and issued her right-to-sue notice on January 28, 2025.  (Id.)

On April 25, 2025, Plaintiff filed this action pro se, alleging that Kellogg violated Title VII and the ADA.  (ECF No. 2.)  Specifically, she alleges that Kellogg discriminated against her because of disability by failing to accommodate her.  She further alleges that Kellogg unlawfully retaliated against her.  (Id. at PageID 4.)

On April 9, 2026, Kellogg filed the present Motion for Summary Judgment, arguing that there exists no genuine dispute of material fact and it is entitled to judgment as a matter of law. (ECF No. 24.)

Plaintiff responded in opposition to the Motion on May 6, 2026.  (ECF No. 25.) However, that response is infirm under Local Rule 56.1(b) and Federal Rule 56, as it does not clearly respond to or dispute the enumerated assertions in Kellogg's Statement of Undisputed Material Facts.  See Fed. R. Civ. P. 56(e); LR 56.1(b)(3).[2]  Generally, Plaintiff contends that

---

[2] The Court's Local Rules unequivocally state:
Each disputed fact must be supported by specific citation to the record.  Such response shall be filed with any memorandum in response to the motion.  The response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant.  In either case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant.  In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried.  Each such disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute.

Kellogg's version of the facts is inaccurate, it "never followed Drs. Orders," and its failure to allow her to work overtime in other departments was both discrimination and retaliation based on her disability. (ECF No. 25 at PageID 376.) Almost paradoxically, Plaintiff asserts that Kellogg failed to accommodate her restrictions at any point, but, also, because it refused to allow her to do work that violated her restrictions, it retaliated against her in violation of the ADA.

The R&R was filed on July 13, 2026, (ECF No. 29). Neither Party timely objected to the R&R, but Plaintiff filed objections three days late on July 30, 2026. (ECF No. 30.)

## II.    THE R&R

A federal magistrate judge may submit to a district judge proposed findings of fact and recommendations for ruling on a motion for summary judgment. 28 U.S.C. § 636(b)(1)(B). "Within [fourteen] days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1). A district court reviews de novo only those proposed findings of fact or conclusions of law to which a party specifically objects; the rest are reviewed for clear error. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

The R&R's proposed findings of fact accurately reflect the facts, which are not genuinely in dispute, particularly given Plaintiff's failure to provide support for her position. As for its conclusions of law, the R&R recommends granting Kellogg's Motion because (1) Title VII does not cover disability discrimination claims, (2) Kellogg did not fail to accommodate Plaintiff, and (3) there is no causal connection between Plaintiff's alleged protected activity and any adverse action. (ECF No. 29 at PageID 458–62.)

---

LR 56.1(b). Plaintiff did not comply with this rule at all in her response. (See generally ECF No. 25.)

Because the filings of pro se litigants are entitled to liberal construction, the Court fully

considers Plaintiff's specific, though untimely, objections. See Haines v. Kerner, 404 U.S. 519,

520 (1972); accord El Bey v. Roop, 530 F.3d 407, 413 (6th Cir. 2008). However, several of her

objections are too vague or unspecific to trigger de novo review. "The rule in the Western

District of Tennessee and in the Sixth Circuit has long been that '[t]he filing of vague, general, or

conclusory objections does not meet the requirement of specific objections and is tantamount to a

complete failure to object.'" Bey v. Rhodes Coll., No. 23-cv-02065, 2024 U.S. Dist. LEXIS

246118, at *8 (W.D. Tenn. Apr. 10, 2024) (quoting Zimmerman v. Cason, 354 F. App'x 228, 230

(6th Cir. 2009)).

### III.    ANALYSIS

**A.    Applicable Law**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A fact is "material" if "proof of that fact would establish or refute an essential element of

the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir.

2012) (citing Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)). Courts view facts in the

record and reasonable inferences that can be drawn from those facts in the light most favorable to

the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp, 475 U.S. 574, 587 (1986).

Once a properly supported[3] motion for summary judgment has been made, the party

opposing summary judgment must show that there is a genuine dispute of material fact by

---

[3] Each party must properly support the facts upon which it relies, or the allegation is not considered. Fed. R. Civ. P. 56(c)(1)(A)–(B). When a party fails to address or dispute a properly supported factual position made by the opponent, those factual positions are deemed undisputed. Fed. R. Civ. P. 56(c)(1)–(2), (e)(2)–(3).

pointing to evidence in the record or showing that the movant is not entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c)(1).  A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmovant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Although courts view all evidence and "justifiable inferences" in the light most favorable to the non-moving party, "the mere existence of some alleged factual dispute[s] between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. at 247–48, 255.  A court's role is not to weigh evidence or assess the credibility of witnesses, but simply to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Kroll v. White Lake Ambulance Auth., 763 F.3d 619, 623 (6th Cir. 2014) (internal quotation marks omitted) (quoting Anderson, 477 U.S. at 251–52).

Turning to the substantive law, the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . [the] terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  One type of ADA discrimination is a failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  Brumley v. United Parcel Serv., Inc., 909 F.3d 834, 839 (6th Cir. 2018) (quoting 42 U.S.C. § 12112(b)(5)(A)).  To establish a prima facie case for failure to accommodate, a plaintiff must show that "(1) [she] is disabled under the ADA; (2) [she] is otherwise qualified for the position, with or without a reasonable accommodation; (3) [her] employer knew or had

7

reason to know of [her] disability; (4) [she] requested a reasonable accommodation; and (5) the

employer failed to provide the reasonable accommodation." Aldini v. Kroger Co. of Mich., 628

F. App'x 347, 350 (6th Cir. 2015) (citing Johnson v. Cleveland City Sch. Dist., 443 F. App'x 974,

982–83 (6th Cir. 2011)).

Further, at summary judgment, ADA retaliation claims are subject to a three-part burden

shifting test.  First, to establish a prima facie case of ADA retaliation, a

> plaintiff must show that (1) [she] engaged in activity protected by the ADA; (2) the
> defendant knew of this exercise of plaintiff's protected rights; (3) the defendant
> subsequently took an employment action adverse to plaintiff or subjected the plaintiff
> to severe or pervasive retaliatory harassment; and (4) there was causal connection
> between the protected activity and the adverse employment action.

Hurtt v. Int'l Servs., Inc., 627 F. App'x 414, 422 (6th Cir. 2015) (citing Steward v. New Chrysler,

415 F. App'x 632, 643–44 (6th Cir. 2011)) (second citation omitted).  If a plaintiff "establishes a

prima facie case of retaliation, the burden shifts to the defendant to establish a legitimate,

nondiscriminatory reason for the adverse" action.  Penny v. United Parcel Serv., 128 F.3d 408,

417 (6th Cir. 1997).  If a defendant meets their burden, the burden finally shifts back to the

plaintiff to prove that that Defendant's "proffered reason for the action was merely a pretext for

discrimination."  Chaniott v. DCI Donor Servs., Inc., 481 F. Supp. 3d 712, 727 (M.D. Tenn.

2020) (quoting Penny, 128 F.3d at 417).

**B.      Plaintiff's Objections**

Plaintiff lodges several objections to the R&R, most of which take issue with the R&R's

factual findings.  Some are reviewed de novo, and others are insufficient to trigger de novo

review.  The objections are grouped together below for ease of analysis.

8

*1.*     *Objection One*

The R&R finds that Kellogg's factual assertions are undisputed under Local Rule 56.1(d) because of Plaintiff's failure to comply with this rule in responding to Kellogg's Statement of Undisputed Facts.  (ECF No. 29 at PageID 454.)  Plaintiff disagrees, and makes a twofold argument: first, she should be allowed to file a "corrected response that cites Exhibits A–I and J–N directly" and, second, the Court "must determine whether Defendant's cited material actually supports the asserted fact."  (ECF No. 30 at PageID 465.)

First, Plaintiff is not entitled to file an amended statement of facts in opposition to the Motion for Summary Judgment.  Her response to the Motion's statement of facts is, indeed, infirm—as Kellogg points out in its reply, Plaintiff's response includes vague, conclusory assertions about the underlying facts, fails to numerically correspond to Kellogg's enumerated statement of facts, and only occasionally cites evidence.  (ECF No. 25 at PageID 379–82.)  And even those citations refer to documents not propounded during discovery, or which fail to meet the requirements for affidavits and declarations.  (ECF Nos. 29 at PageID 454 ("Plaintiff's Response fails to clearly respond to Defendant's Statement of Undisputed Material Fact in the manner prescribed by Local Rule 56.1(b)." (citation modified)); 26 at PageID 414–15 (reviewing Plaintiff's factual statements and arguing that they fail and should be stricken pursuant to Rule 56(e)).)

Plaintiff is not entitled to supplement her response at this late stage, three months after the Motion was filed and months after the reply that highlighted the response's deficiencies.  While the Court considers her tardy objections because of the unknown difficulties that could have caused her delayed filing, it is inappropriate to abrogate the basic summary judgment requirements under the Federal and Local Rules merely because Plaintiff is pro se.  See Freeman

9

v. Sullivan, 954 F. Supp. 2d 730, 758 (W.D. Tenn.) ("The basic pleading essentials are not

abrogated in pro se cases.") (citing Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989)), R. & R.

adopted, 954 F. Supp. 2d 730 (W.D. Tenn. 2013).

In addition, Plaintiff's second argument overlooks a core aspect of summary judgment.

As she states, Kellogg's factual assertions must rely on record evidence to be properly supported,

and indeed they are. See Fed. R. Civ. P. 56(c)(1). However, Plaintiff ignores that it is her

burden, not Kellogg's or the Court's, to point to evidence creating a genuine dispute of fact.

Plaintiff's factual disputes consist of last-minute exhibits (not considered here, as explained

above), vague conclusions, and arguments about the underlying events from her subjective

viewpoint. She cannot survive summary judgment by relying on "personal beliefs" or

"speculation." Grizzell v. City of Columbus Div. of Police, 461 F.3d 711, 724 (6th Cir. 2006).

Therefore, her objection as to Kellogg's "Rule 56 Burden" is **OVERRULED**.

*2.    Objection Two*

The R&R also finds that the Kellogg Plant had no "'light duty' or sedentary jobs for

employees with restrictions." (ECF No. 29 at PageID 455 (citation omitted).) Plaintiff objects to

this factual finding and argues that, because she received "Light Duty Time Cards" while under

lifting restrictions, there is a "factual question about when, how, and under what authority

Defendant claims that practice ended or became unavailable." (ECF No. 30 at PageID 466.)

Plaintiff's second objection about how her accommodated labor is labeled is immaterial

to the elements of her claims. Whether Kellogg explicitly labeled Plaintiff's work under the

lifting restrictions as "light duty" is irrelevant, because it is undisputed that Kellogg adjusted

Plaintiff's work and assigned her "to alternative, available work that [could] accommodate those

restrictions." (ECF No. 24-6 at PageID 336.) That is, regardless of its naming of positions as

10

"light" or "sedentary," Kellogg provided employees roles with less intense physical tasks when necessary.  And the issue is whether Kellogg failed to provide a reasonable accommodation, so the labelling of that work as "light" or not is immaterial to Plaintiff's ADA claims.  Therefore, even reviewed de novo, the R&R's factual conclusion that "[t]he Memphis Plant does not have any 'light duty' or sedentary jobs for employees with restrictions" was not error, as the R&R sufficiently considers not the labelling of the jobs, but, instead, whether Kellogg worked with Plaintiff to accommodate her medical restrictions.  It did.  Plaintiff's second objection is thus **OVERRULED**.

       *3.     Objections Three and Four*

Plaintiff's third objection is extremely unclear as to the time period at issue, but appears to dispute the R&R's finding that, in February 2023, Plaintiff was reassigned to the Tank Room, and her lifting actions were delegated to coworkers who could lift more weight.  (ECF No. 30 at PageID 466–67.)  In objection four, Plaintiff asserts that no other Tank Room employees helped her with heavy lifting while she had work restrictions, and cites eight alleged affidavits of unknown individuals with their names handwritten on blanks.  (Id. at PageID 466–67.)  She attached those affidavits to her response to the Motion for Summary Judgment.  (ECF No. 25-1 at PageID 383–90.)  However, her objections fail, because Kellogg cites uncontroverted evidence, in the form of Brenda Bryson's Declaration, that Plaintiff was reassigned to the Tank Room in January 2023, and that Plaintiff's coworkers assisted her with heavy lifting.  (ECF No. 24-4 at PageID 93–94.)  Further, and critically, Plaintiff admitted in her deposition that her coworkers helped her with heavy lifting.  (ECF No. 24-5 at PageID 254–55 ("I have coworkers assist me, so that's the whole point.  You can work there on light duty.  I have been working there on light duty. . . . yeah, that's what I just stated.  Yes, my workers help me.").)

11

As for Plaintiff's eight affidavits, they do not create a genuine factual dispute.  First, it is unclear whether these "Sworn Statements" by Tank Room Operators, all somehow obtained on April 17, 2026, at 6:58 p.m., were executed by every tank room operator that worked with Plaintiff during the relevant period.  Second, the allegation that these other operators were "never informed by management" or "reassigned to do any lifting for Petrece" does not, by itself, contradict the evidence cited by Kellogg.  (ECF Nos. 24-5, PageID 241–243, 250–251, 254–255; 24-4, PageID 93, ¶ 11; 24-6, PageID 339).  Third, and most importantly, a nonmovant cannot survive summary judgment "simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity."  Cleveland v. Pol'y Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999) (collecting cases).  Although informal affidavits are acceptable at summary judgment, six of these eight affidavits lack a signature and date of signing comporting with 28 U.S.C. § 1746, and all contradict Plaintiff's own testimony.  Therefore, objections three and four are **OVERRULED**.

　　　　4.　　*Objections Five and Six*

Plaintiff's fifth objection lodges a general argument against the R&R's "crediting" Kellogg's proof that it reassigned Plaintiff to the Tank Room in January 2023.  (ECF No. 30 at PageID 467.)  However, the fact that Plaintiff was assigned to the Tank Room in early 2023 is not disputed, and she fails to "pinpoint those portions of the magistrate's report that the" Court "must specially consider."  See Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986) (quoting Nettles v. Wainwright, 677 F.2d 404, 410 (5th Cir. 1982)).  Plaintiff makes the same mistake on objection six, in which she generally argues that the R&R erred by "[a]ccepting" Kellogg's "explanation."  (ECF No. 30 at PageID 468.)  This vague, conclusory argument is insufficient to

12

trigger de novo review, and the R&R's factual findings as to Plaintiff's Tank Room assignment were not clear errors.  Therefore, these two objections are **OVERRULED**.

      5.      *Objection Seven*

Plaintiff's seventh objection disputes the R&R's legal conclusion that Kellogg reasonably accommodated Plaintiff by providing her with positions where restricted work was either not allowed or assigned to coworkers.  (ECF No. 30 at PageID 468.)  She bases her objection on the allegation that Kellogg did not produce a "written plan" of the accommodations in the form of "written assignment, medical restrictions, named coordinators, periodic reviews, time cards, and payroll approval."  (Id.)

Nothing in the ADA's text or application requires an accommodation to be in writing to be reasonable.  See Bevington v. Wright State Univ., 23 F. App'x 444, 445 (6th Cir. 2001) ("[N]either the Rehabilitation Act nor the Americans with Disabilities Act require a written plan for post-secondary students."); cf. Edwards v. Shelby County, No. 22-cv-02682, 2024 U.S. Dist. LEXIS 104533, at *58 (W.D. Tenn. June 12, 2024) ("The ADA does not require the use of any 'magic words like accommodation disability, or ADA' when an employee requests an accommodation." (quoting Childers v. Hardeman Cnty. Bd. of Educ., No. 13-1209, 2015 U.S. Dist. LEXIS 4687, at *19 (W.D. Tenn. Jan. 15, 2015))).  Just like a request for an accommodation need not be in writing, an accommodation itself need not be formal or written. Barley v. Meijer Great Lakes Ltd. P'ship, No. 23-12746, 2025 U.S. Dist. LEXIS 42831, at *24– 25 (E.D. Mich. Mar. 10, 2025) ("The ADA does not require a request for accommodation to be in writing but the employee must communicate a need for an adjustment at work.").

Here, the R&R reviewed the record, including Plaintiff's varying object-lifting restrictions and assignments to jobs without heavy lifting, and concluded that Kellogg reasonably

13

accommodated her; Kellogg "consider[ed] the particular job involved, its purpose and essential functions," Plaintiff's limitations, and "the effectiveness an accommodation would have in enabling" her "to perform the job."  (ECF No. 29 at PageID 461.)  Plaintiff does not genuinely dispute the declarations, affidavits, meeting notes, and deposition that demonstrate Kellogg's interactive accommodation process, but, rather, argues that Kellogg violated its "own prior practice."  (ECF No. 30 at PageID 469.)  An employer failing to adhere to a prior practice of creating written accommodations plans, when it accommodated the employee nevertheless, cannot by itself establish the necessary elements of the failure-to-accommodate claim.  Thus, Plaintiff's seventh objection is **OVERRULED**.

### 6.     *Eighth Objection*

In her eighth and final enumerated objection, Plaintiff argues that her retaliation claim survives because Kellogg did not produce "light-duty records, sworn affidavits, shift sheets, supervisor/helper statements, or any documented CBA or policy change," and, thus, a jury could resolve the facts in her favor as to pretext for retaliation.  (ECF No. 30 at PageID 468–69 (citation modified).)  Again, Plaintiff overlooks that her duty at summary judgment is to raise record evidence that creates a genuine dispute as to pretext, and she has not.  Therefore, her final objection is **OVERRULED**.

## C.     Remaining Issues

The remainder of the R&R is subject to clear error review, and the Court discerns none. The R&R correctly concludes that Title VII does not cover disability discrimination.[4]  Further, the R&R accurately describes the interactions between Kellogg and Plaintiff, and explains how Kellogg repeatedly accommodated Plaintiff's lifting restrictions despite her protestations that she

---

[4] In any event, Plaintiff abandoned her Title VII claims.  (ECF No. 25 at PageID 374.)

14

should be allowed to do work that would have violated her doctor's instructions.  Having

reviewed de novo the conclusions of the R&R to which Edwards-Bradford objects, and having

reviewed for clear error the remainder of the R&R, and discerning none, the Court **ADOPTS** the

R&R in full.

### IV.    <u>CONCLUSION</u>

Given the foregoing, no genuine dispute of material fact exists, and Kellogg is entitled to

judgment as a matter of law on Plaintiff's failure-to-accommodate and retaliation claims.

Plaintiff's objections are **OVERRULED** and the R&R is **ADOPTED IN FULL**.  Kellogg's

Motion for Summary Judgment is hereby **GRANTED**.

**IT IS SO ORDERED**, this 11th day of August, 2026.

s/  Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE